HOUSTON, Justice.
The plaintiffs, D & Z, Inc., Blue Water Park, Inc., and Blue Water Scuba, Inc. (all hereinafter referred to as D & Z), appeal from a jury verdict rendered in favor of the defendants, Sam and Patricia Reames and their company, Peleo, Inc. D & Z argues that the trial court erred in three respects: (1) in allowing a tape recording to be used at trial, (2) in how the court allowed the defendants to cross-examine the witness Douglas Hulon, and (3) in allowing the testimony of expert witness Robert Dow for the defense. We affirm.
The Reameses own Peleo, which sells steel pipe. D & Z, which is run by the Hulon family, sold the Reameses some property that ran along the edge of a water-filled quarry, or quarry lake; the Reameses planned to use the property for storing pipe. Peleo required a flat area to store the pipe, and because the lot was rather steep, it had to be filled in, or “backfilled.” The contract for the sale of that land stated:
“[T]he parties agree that this sales contract shall be completed as portions of the property are backfilled by purchasers to the level of the Quarry and to the edge of the Quarry Lake. Upon the completion of such backfill, the sellers shall execute to the purchasers title to said property by warranty deed in fee simple absolute.”
The same parties also executed an agreement that granted to the Reameses “an easement for the purpose of backfilling and use between the Quarry Lake and the boundary fine of that property transferred.” The easement also provided “that neither Peleo, Inc., Sam Reames, Jr., [n]or Patricia L. Reames shall permit any drainage of any substance into the Quarry Lake which pollutes the lake.”
The Reameses backfilled the property with discarded pieces of concrete from a nearby concrete plant. Apparently, as the lot was being backfilled, some concrete fell into the lake. D & Z sued, both to enjoin further backfilling and to seek damages, claiming that the excess concrete qualified as “pollution” of the lake and violated the contract of sale.
At the trial, Hulon testified that he had held a certain conversation on the property with Sam Reames, but denied that he had ever told Reames that it would be all right if some “material,” i.e., concrete, fell into the water. He denied telling Reames that it would be all right to stockpile material along the top of the bank for graders to smooth over later. He also denied that he had told Reames that the Reameses would need “a good bit of stuff’ to backfill along the water’s edge. However, unknown to Hulon, Reames had tape-recorded the conversation, and at trial, the Reameses’ attorney sought to use the tape in cross-examining Hulon.
D & Z objected to the admission of the tape into evidence, and the trial court, in deference to that objection, limited the defendants’ use of the tape — (1) they could introduce it, but not cross-examine Hulon about it, or (2) they could use it to cross-examine Hulon on his prior inconsistent statements, but, in that case, they could not introduce the tape into evidence. The Reameses chose the latter alternative, and, when confronted with the tape recording of the conversation, Hulon recanted much of his earlier testimony, contending that he had had two conversations with Reames.
*900 D & Z now argues that the trial judge erred in allowing this use of the tape and in allowing this devastating cross-examination of Hulon. D & Z contends that because the Reameses did not produce the tape during discovery, but revealed the tape’s very existence only at trial, they should not have been allowed to use it at all. During discovery, D & Z requested the Reameses to produce “[a]ny and all written documents, papers, etc., relating to the several agreements which are the subject of the instant lawsuit.” D & Z contends that the word “documents” was defined in D & Z’s request for production as including recordings or transcripts.
The Reameses point to the trial court’s pre-trial order regarding documents and exhibits to be used at trial:
“Not later than 10 days before the above designated trial date, the parties are required to furnish ea'ch other either original documents and exhibits, or copies of original documents and exhibits, which will be offered into evidence during the trial of this cause- Documents and instruments to be used for impeachment only are not subject to the foregoing Order.”
D & Z never objected to this discovery order and does not argue on appeal that the trial judge erred by limiting discovery in this manner. The Reameses’ attorney correctly argued at trial that if, on direct examination, Hulon had portrayed the conversation accurately, there would have been no need to produce the tape — there would have been no prior inconsistent statement. Clearly, the tape was used “for impeachment only.” A trial court enjoys a broad discretion in administering the discovery process and in overseeing the cross-examination of witnesses, and its decisions on those matters will be overturned only on a showing of an abuse of that discretion. Rules 34 and 37, Ala.R.Civ.P.; Williston v. Ard, 611 So.2d 274 (Ala.1992); Wolff v. Colonial Bank, 612 So.2d 1146 (Ala.1992). The Reameses complied with the court’s pre-trial discovery order, and the trial judge did not abuse his discretion in allowing the use of the tape, nor in allowing the Reameses to extensively cross-examine Hulon.
D & Z was conspicuously reluctant to provide any answer to the Reameses’ repeated interrogatories about the economic losses they claimed to have suffered because of the Reameses’ actions. On the eve of trial, D & Z amended its answer to the interrogatories to claim $1.5 million in economic losses. At trial, the Reameses called Robert Dow, a real estate appraiser, in order to contest D & Z’s figure.
Dow testified that the proper method for valuating a piece of commercial property, such as the one involved here, would be to look at the income stream it generates. According to Dow, the owner’s opinion of value, or, in this case, of lost value, is not significant. However, Dow did not actually give a market valuation of the quarry. He testified only as to the proper method to be used. The evidence in the case indicated that D & Z’s revenue had actually increased through the years, and the jury apparently concluded that D & Z had suffered no losses whatever.
D & Z now claims that because Dow made no calculation of the fair market value of the quarry at issue, the trial court erred in allowing the testimony. However, Dow was never asked to perform an actual valuation, and he was certainly qualified to give his opinion on the proper method of valuating the property at issue. He had previously qualified as an expert in real estate matters in hundreds of cases; he had visited the quarry in question; he even owns- a quarry himself. The trial court did not abuse its discretion in allowing Dow to testify as to matters in which he was obviously expert. See, General Motors Corp. v. Johnston, 592 So.2d 1054 (Ala.1992).
Because D & Z has not demonstrated that the trial court abused its broad discretion in evidentiary matters, we affirm the judgment.
AFFIRMED.
HORNSBY, C.J., and ALMON, KENNEDY and INGRAM, JJ., concur.